# STATE ex rel. ELIZABETH MURPHY, Respondent, v. GEO. J. JACKSON, Appellant.

### St. Louis Court of Appeals, April 1, 1902.

1. **Statutory Construction: PRACTICE, TRIAL: LUNACY PROCEEDING.** Under section 3652, Revised Statutes, in ex parte lunacy proceeding, the insane person must be notified and brought into court; or the reason for dispensing with such notice, or of her or his attendance in court, must be shown by the record.

2. **Practice, Trial: RECORD.** And it is not sufficient for the record to simply show that the court found from the evidence that such person was in such a state of mind and health that service of notice, or his or her attendance in court, was not required; that is, without showing what ailed her mind or body.

3. **Statutory Construction.** Statutes that dispense with notice in ex parte inquiries emphatically call for a strict construction.

4. **Practice, Trial: PRACTICE, APPELLATE.** Certiorari is the proper remedy to review the proceedings of the probate court, on its action in ex parte lunacy proceedings, in the circuit court.

Appeal from Lincoln Circuit Court.—*Hon. Elliott M. Hughes,* Judge.

AFFIRMED.

*Geo. T. Dunn* and *Chas. Martin* for appellant.

(1) An application or petition for writ of certiorari is an extraordinary remedy, and the writ is not issued as a matter of right. State ex rel. v. Valliant, 123 Mo. 524; State ex rel. v. Orrick, 106 Mo. 111. (2) The writ should not issue when there is an adequate remedy at law. State ex rel. v. Woodson, 161 Mo. 444. (3) "Adequate remedy" means sufficient for the purpose. 1 American and English

Encyclopedia of Law (2 Ed.), 632; 2 American and English Encyclopedia of Law (2 Ed.), 200. (4) The writ should not issue to an inferior tribunal so long as that tribunal has the power to correct the error or wrong complained of. State ex rel. v. Gill, 137 Mo. 627; State ex rel. v. Smith, 101 Mo. 174; Railroad v. Morton, 37 Mo. 317; 4 American and English Encyclopedia of Pleading and Practice, 50 and 90; Wheelzen v. Supervisors, 40 Am. St. 17, note 30. (5) The court will decide upon the record proper, although no excep-tions were taken, and decide the case and give such judgment as the lower court ought to have given, as shall seem agreeable to law, no exceptions being necessary. R. S. 1899, sec. 866; Bateman v. Clark, 37 Mo. 31; Railway v. Carlisle, 94 Mo. 166; Railway v. Lewright, 113 Mo. 660; State to use v. Matson, 38 Mo. 489.

*Norton, Avery & Young* for respondent.

(1) Circuit courts exercise a superintending control over probate courts. Sec. 23, art. 6, Constitution. "If information in writing be given to the probate court that any person in its county is an idiot, lunatic or person of unsound mind and incapable of managing his affairs, and praying that an inquiry be had, the court, if satisfied that there is good cause for the exercise of its jurisdiction, shall cause the facts to be inquired into by a jury." Sec. 3650, R. S. 1899. "In proceedings under this chapter the alleged insane person must be notified of the proceedings, unless the probate court orders such person to be brought before the court, or spread upon its record of its proceedings the reason why such notice or attendance was not required." Sec. 3652, R. S. 1899. (2) The mode provided by law for inquisition of lunacy must be followed; if not, the proceedings are irregular and void. Kiehne v. Wessel, 53 Mo. App. 667; Dutcher v. Hill, 29 Mo. 271; In re Marques, 85 Mo. 615; State ex rel. v. Baird, 47 Mo.

301. (3) Common-law writ of certiorari only brings up the record and can only reach defects or errors in the proceedings of the tribunal to which it is issued, which appear upon the face of the record. In the case of State ex rel. v. Gill, 137 Mo. 627, an effort was made by the writ of certiorari, in proceedings pending before the Kansas City Court of Appeals, to remove the same to the Supreme Court before a hearing had been had by the Kansas City Court of Appeals, and it not appearing from the record that there was any want of jurisdiction, the request was denied. In the case of State ex rel. v. Smith, 101 Mo. 174, Judge SHERWOOD says of the writ of certiorari as follows: "This writ, under constitutional provisions, is strictly the common-law writ of that name; it only brings up the record and can only reach error or defects which appear on the face of the record, which are jurisdictional in their nature."

GOODE, J.—Elizabeth Murphy was adjudged to be of unsound mind in an ex parte proceeding by the probate court of Lincoln county, instituted on an information filed by her four children, and one of them was appointed guardian of her person and curator of her estate. Afterwards she applied to the circuit court of said county for a writ of certiorari to the judge of the probate court to compel him to certify the full record in said proceeding, which writ was granted and obeyed.

The findings and judgment of the probate court were set aside or quashed for want of jurisdiction of that court over the person of the relator and an appeal was taken by one of the informants.

Two questions arise: Was the probate court without jurisdiction? Was certiorari the appropriate remedy?

I. The question as to jurisdiction is to be answered by consulting the statutes, which contain the following provision in regard to notice to the alleged lunatic:

"In proceedings under this chapter, the alleged insane person must be notified of the proceeding, unless the probate court order such person to be brought before the court, or spread upon its records of its proceedings the reason why such notice or attendance was not required." R. S. 1899, sec. 3652.

Mrs. Murphy was not ordered to be brought before the court, nor was she notified of the proceeding; that much is admitted. But it is claimed the following recital in the judgment entry, made by the judge of probate, dispensed with either notice or attendance:

"And the cause coming on to be heard, the court finds from the evidence adduced that said Elizabeth Murphy is in such a state of mind and health that service of notice on her and her attendance at court is unnecessary."

It will be observed that the above recital does not specify what the state of Mrs. Murphy's mind or health was; but only that, in the opinion of the probate judge, it was such as rendered service of notice on her or her attendance unnecessary. No disability or disease is mentioned, and hence, there is no information imparted as to what condition of health or mind would be sufficient to dispense with notice or attendance, in the judgment of that officer. It might be a slight or a serious impairment, or none at all. Such a construction of the law is inadmissible unless the statute confers on the judge of probate a discretion as to requiring notice to, or the attendance of, the accused. But an examination of the former statute seems to settle that the present one took away instead of conferring discretion in that regard.

In lunacy investigations prior to the enactment of the Revised Statutes of 1879, the law on the point was as follows:

"In proceedings under this chapter, the county court may, *in its discretion,* cause the person alleged to be of unsound mind to be brought before the court." Chap. 40, sec. 3, Gen. Stat. 1865.

A change from this discretionary power was thought necessary by the Legislature, and the law was amended to read as it now does. We think the recital spread on the record of the probate court was insufficient to give jurisdiction because it did not state the reason why notice to or the attendance of the relator was not given or required—that is to say, what ailed her mind or body. She was entitled to an opportunity to be heard—to her day in court—unless she was incapable of attending. It was not a mere matter of the judge's opinion as to the necessity for notice, but of her right. We can not be blind to the dangerous abuses which may be and have been practiced in ex parte lunacy inquiries. A citizen's liberty and property are both imperiled. Statutes that dispense with notice in those cases in certain contingencies, emphatically call for a strict construction, and while we will enforce the law according to its true intent, we will not enlarge it by a hair's breadth.

2. Was certiorari the proper way to take the matter to the circuit court for review? On this point the appellant's contention is that relator could have presented a motion to the probate court to set aside its judgment and could have appealed from an order overruling such a motion. The right to appeal is by no means clear, and as jurisdiction was shown to be lacking on the face of the record, we think the remedy invoked was appropriate. State ex rel. v. Dowling, 50 Mo. 134; State ex rel. v. Smith, 101 Mo. 174; Dunlap v. Railway Co., 46 Mich. 190.

The judgment is affirmed. All concur.